UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| DARLA E. RAUGHT,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Comm.<br>Social Security Administration,<br><br>            Defendant, | ED CV 08-00527-SH<br><br>MEMORANDUM DECISION |

I. PROCEEDINGS

This matter is before the Court for review of the Decision by the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the

Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and the parties have filed a joint stipulation. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

On May 25, 2004, Plaintiff Darla Estelle Raught filed an application for Supplemental Security Income alleging an inability to work since January 1, 1997, due to disability. (AR 43). The claim was denied initially on September 1, 2004, and upon re-consideration on January 29, 2005. (AR 31, 37). The Plaintiff filed a timely written request for a hearing before the Administrative Law Judge (ALJ) on March 29, 2005. The Plaintiff appeared and testified at a hearing held on July 10, 2006 in San Bernardino, CA. (AR 405). Following receipt of a Decision denying benefits on October 16, 2006, Plaintiff sought review to the Appeals Council. The Appeals Council declined review on March 14, 2007. (AR 3-5).

Plaintiff makes five challenges to the ALJ's determination. Plaintiff alleges that the ALJ erred 1) in failing to properly represent the medical evidence and consider the treating psychiatrist's findings; 2) in failing to properly consider whether the Plaintiff had a "severe" mental impairment; 3) in failing to properly rate Plaintiff's mental functional limitations; 4) in failing to obtain vocational expert testimony for Plaintiff's non-exertional limitations; 5) in failing to make proper credibility findings about Plaintiff's testimony.

Each of Plaintiff's contentions will be addressed in turn.

**ISSUE NO.1:** The ALJ Properly Represented The Medical Evidence and the Treating Psychiatrist's Opinion

Plaintiff argues that the ALJ did not properly consider the opinions of Dr. Patel, Plaintiff's treating psychiatrist. A treating physician's opinion is entitled greater weight than that of an examining physician. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.

1987)); 20 C.F.R § 416.927 (d) (1). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, supra (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 n.7 (9th Cir. 1989)). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R §416.927 (b)- (d). "The [Commissioner] may disregard the treating physician's opinion whether or not that opinion is contradicted." Magallanes v. Bowen, supra (citing Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)). A treating physician's medical opinion unsupported by medical findings, personal observations, or test results may be rejected. See Burkart v. Bowen, 856 F. 2d 1335, 1339 (9th Cir. 1988).

In his Decision, the ALJ carefully considered and evaluated Dr. Patel's findings. The ALJ noted that on April 7,1999, Dr. Patel provided an initial psychiatric assessment of Plaintiff, who had been sober from amphetamine abuse for one month. AR 15, 124. The ALJ noted that Plaintiff was treated by Dr. Patel for the following two months and that on May 18, 1999, Plaintiff reported a good response to Paxil. AR 15, 117. The ALJ also stated that Plaintiff failed to attend her following appointments with Dr. Patel and her file was closed on August 24, 1999. AR 15. The ALJ further acknowledged that Plaintiff did not indicate during her testimony having a mental impairment and that there was no evidence indicating that Plaintiff received further psychiatric treatment. AR 15. Moreover, as the Defendant notes, Dr. Patel did not make any functional limitation findings. AR 114-125. Accordingly, Plaintiff's short period of treatment, her report of having a good response to Paxil, not receiving further psychiatric treatment supported the ALJ's determination that Plaintiff did not suffer a disabling mental limitation.

Plaintiff further contends that the ALJ improperly represented the evidence and failed to discuss certain findings of Dr. Patel from his initial assessment on April 7, 1999. The ALJ may draw inferences logically from the evidence. Sample

v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Also, a reviewing court may draw specific and legitimate inferences from the ALJ's opinion. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). Hence, contrary to Plaintiff's contention, the ALJ is not required to mention every detail of the record in his Decision and is only required to explain why "significant evidence has been rejected." Vincent v. Heckler, 739 F.2d 1393, 1394-1395. (9th Cir. 1984). In the present case, Dr. Patel's initial assessments should be considered in the totality of all the evidence including that Plaintiff had just begun the first day of her treatment with Dr. Patel, reported a good response to Paxil six weeks later and did not seek further psychiatric treatment after her short two months treatment with Dr. Patel.

In addition, the two consultative psychiatric examinations further supported the ALJ's finding. On July 30, 2002, Dr. Smith conducted a consultative psychiatric examination. AR 15,147. The ALJ noted Dr. Smith's findings that the plaintiff's thought processes, thought content, mood and affect, speech, intellectual functioning, memory, fund of knowledge, concentration and calculation, ability to make abstractions, and judgment and insight were all intact. AR 15, 149-150.

The ALJ stated that Dr. Smith diagnosed a depressive disorder, NOS, and a GAF of 65. AR15. The ALJ also noted Dr. Smith's finding that Plaintiff had mild depression, at most, in the ability to interact with co-workers, supervisors or the public. AR15, 151. In his Decision, the ALJ concluded by agreeing with Dr. Smith, but stated that the record does not indicate that plaintiff has mild depression affecting her ability to work. AR 15.

Moreover, Dr. Smith's functional assessment indicated that Plaintiff is not impaired in her ability to understand, remember or complete simple or complex commands; to comply with job rules such as safety and attendance; to respond to change in the normal workplace; to maintain persistence and pace in a normal workplace setting; and that Plaintiff is mildly impaired in her ability to interact appropriately with supervisors, co-workers, or the public due to possible

interference from depressed mood. AR 151. Dr. Smith also noted that Plaintiff was not receiving any psychiatric care, that antidepressants had helped her in the past, and that she is likely to improve again if she resumes psychiatric care or psychiatric medication. AR 151.

Furthermore, on July 21, 2003, Dr. Fontana conducted a consultative psychiatric examination and found no justification for mental limitations. AR 16. Dr. Fontana assessed Plaintiff with a GAF score of 65 and diagnosed Plaintiff with cannabis and methamphetamine abuse, in remission, and dysthymic disorder. AR 16. In his Decision, the ALJ noted that Dr. Fontana's mental status examination showed no abnormalities. AR 16.

The ALJ concurred and adopted Dr. Fontana's assessment. AR 15. Dr. Fontana's functional assessment indicated that the Plaintiff is incapable of managing her own funds based on her past history of substance abuse; is able to accept instructions from supervisors and interact with coworkers and the public; should be able to perform simple and repetitive tasks as well as more detailed and complex tasks; should be able to perform work activities on a consistent basis; and should be able to maintain regular attendance in the workplace and complete a normal workday or workweek. AR 205-206.

Moreover, Plaintiff contends that the ALJ failed to properly consider the GAF score of 40, and erred in noting that the GAF score factored in the Plaintiff's recent amphetamine abuse. A GAF score uses a single value that best reflects the claimant's overall level of psychological, social and occupational functioning. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (revised 2002). The ALJ may consider the GAF score in formulating the RFC but " it is not essential to the RFC's accuracy… [t]he ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate." Howard v. Comm'r of Soc. Sec., 276 F. 3d 235, 241 (6th Cir. Mich. 2002). Furthermore, the GAF scale "does not have a direct correlation to the

severity requirement in [the] mental disorder listing." See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65.

Nonetheless, even if the ALJ erred in finding that the GAF score factored in the amphetamine use, the error was harmless and would not have affected the ALJ's finding that the Plaintiff was not disabled. Generally if "harmless error" occurred in the administrative process, the claimant is not entitled to a remand. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability); Booz v. Sec'y of Health and Human Servs., 734 F. 2d 1378, 1380-81 (9th Cir. 1984). An ALJ's error is harmless if the mistake " is non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." Stout v. Comm'r. Soc. Sec. Admin., 454 F. 3d 1050, 1055 (9th Cir. 2006); See Curry v. Sullivan, 925 F.2d 1127, 1130-31(9th Cir. 1991); Burch v. Barhart, 400 F. 3d 676, 679 (9th Cir. 2005).

Determining whether Plaintiff had recent amphetamine abuse when Dr. Patel assessed the GAF score is immaterial to the ALJ's Decision. Even if the ALJ considered the GAF score of 40, the score would not alter the Plaintiff's RFC in light of the substantial evidence showing that Plaintiff does not have mental limitations. Moreover, Dr. Patel assessed a GAF score of 40 during his initial assessment, which began Plaintiff's short two month treatment and was six weeks prior to when Plaintiff reported having an "overall good response" to Paxil. AR 15, 117.

Accordingly, the ALJ carefully considered and evaluated evidence of Plaintiff's mental condition and her treating psychiatrist.

///
///
///
///

**ISSUE NO. 2:** <u>The ALJ Properly Evaluated Whether Plaintiff Had a "Severe" Mental Impairment.</u>

Plaintiff argues that the ALJ failed to properly evaluate the severity of Plaintiff's mental impairment. In response, the Defendant asserts that the ALJ properly concluded that the Plaintiff does not have a severe mental impairment.

At step two of the sequential evaluation, the ALJ must consider whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR § 416.920 (c). A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R § 416.920 (2004). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R § 416.921 (1994); <u>Bowen v. Yuckert</u>, 482 U.S 137, 141-142 (1987).

Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the Act. <u>Bowen v. Yuckert</u>, 482 U.S 137, 146 (1987). "The severity requirement increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account." <u>Id.</u> at 153. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of abnormalities that would have no more than a minimal effect on an individual's ability to work. (20 CFR 416.921; Social Security Rulings 85-28, 96-3p and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has

a severe impairment or combination of impairments, the analysis proceeds to the third step.

As discussed in issue 1, the ALJ's Decision that there is "no basis for the imposition of any mental limitations" was supported by substantial evidence. While Dr. Patel made certain assessments on April 7,1999 during the initial consultation, six weeks later Plaintiff reported a good response to Paxil. AR 15, 117. Further, the ALJ noted that Plaintiff only received psychiatric treatments over a two month period and that Plaintiff never mentioned having a mental impairment during her testimony. AR 15.  Also, there was no evidence that Plaintiff received further psychiatric treatment.  AR 15.  Hence, the Plaintiff's short period of treatment, report of having a good response to Paxil and act of not receiving further psychiatric treatments supported the ALJ's determination that the Plaintiff did not have a severe mental impairment

In addition, the ALJ's determination that the Plaintiff's did not have a severe mental impairment was further supported by Dr. Smith and Dr. Fontana's consultative psychiatric examinations.  In his Decision, the ALJ acknowledged Dr. Smith's findings that the plaintiff's thought processes, thought content, mood and affect, speech, intellectual functioning, memory, fund of knowledge, concentration and calculation, ability to make abstractions and judgment and insight were all intact. AR 15, 149-150.  The ALJ noted that Dr. Smith diagnosed a depressive disorder, NOS, and a GAF of 65. AR15. The ALJ also stated Dr. Smith's finding that Plaintiff had mild depression, at most, in the ability to interact with co-workers, supervisors or the public. AR15, 151. In his Decision, the ALJ concluded by agreeing with Dr. Smith, but stated that the record does not indicate that plaintiff has mild depression affecting her ability to work. AR 15.

Furthermore, Dr. Smith's functional assessment indicated that Plaintiff is not impaired in her ability to understand, remember or complete simple or complex commands; to comply with job rules such as safety and attendance; to respond to

change in the normal workplace; to maintain persistence and pace in a normal workplace setting; and that Plaintiff is mildly impaired in her ability to interact appropriately with supervisors, co-workers, or the public due to possible interference from depressed mood. AR 151. Dr. Smith also noted that Plaintiff was not receiving any psychiatric care, that antidepressants had helped her in the past. and that she is likely to improve again if she resumes psychiatric care or psychiatric medication. AR 151.

Moreover, Dr. Fontana also found no justification for mental limitations. AR 16. Dr. Fontana assessed Plaintiff with a GAF score of 65 and diagnosed Plaintiff with cannabis and methamphetamine abuse, in remission, and dysthymic disorder. AR 16. In his Decision, the ALJ noted that Dr. Fontana's mental status examination showed no abnormalities. AR 16**.**

The ALJ concurred and adopted Dr. Fontana's assessment. AR 15. Dr. Fontana's functional assessment indicated that the Plaintiff is incapable of managing her own funds based on her past history of substance abuse; is able to accept instructions from supervisors and interact with coworkers and the public; should be able to perform simple and repetitive tasks as well as more detailed and complex tasks; should be able to perform work activities on a consistent basis; and should be able to maintain regular attendance in the workplace and complete a normal workday or workweek. AR 205-206.

The ALJ also noted the State Agency review psychiatrists' findings from August 14, 2002 and March 28, 2003, which indicated that the Plaintiff did not have any severe mental disorder and that she had no limitations in activities of daily living, social functioning, concentration, persistence, or pace, and no documented episodes of decompensation. AR 16, 155, 179.

Dr. Patel's short treatment with Plaintiff, Dr. Smith and Dr. Fontana's consultative psychiatric examinations and the state agency review psychiatrists' findings do not indicate that the Plaintiff has any mental limitation precluding her

1 from engaging in basic work activities. As such, the ALJ was correct in not finding
2 a severe mental impairment.

**ISSUE. NO. 3:** <u>The ALJ Did Not Fail To Properly Rate Any Mental Functional Limitations</u>

Plaintiff argues that because the ALJ erred in determining that the Plaintiff does not have a severe mental impairment, the ALJ failed to correctly rate the functional limitations of Plaintiff's alleged mental impairment. In response, Defendant contends that because the ALJ found that there was "no basis for the imposition of any mental limitation," the ALJ did not need to rate any mental functional limitations. AR 15.

The mere presence of a mental impairment does not establish entitlement to benefits. In order for plaintiff to recover benefits, the evidence must establish that the impairment is accompanied by a physiological or functional loss establishing an inability to engage in substantial gainful activity. <u>Barker v. Secretary of Health and Human Servs</u>., 882 F.2d 1474, 1477-78 (9th Cir. 1989).

Alleged mental impairments are evaluated under the same sequential analysis as physical impairments. Once the Commissioner determines that a mental impairment exists, the Commissioner must then evaluate the degree of functional loss it causes. This is accomplished by rating plaintiff's level of functional loss in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence and pace; and (4) deterioration or decompensation in work or work-like settings. The first two areas are rated on the following scale: none, slight, moderate, marked, and extreme. The third is rated as follows: never, seldom, often, frequent or constant. The fourth is rated as follows: never, once or twice, repeated or continual.

These ratings are recorded on a form. If an individual's limitations are rated as none or slight in the first two areas, never or seldom in the third and never in the

fourth, the mental impairment will usually be found to be not severe. Any other rating may be considered severe. A rating of marked, extreme, frequent, constant or continual constitutes a degree of limitation that is incompatible with the ability to work. 20 C.F.R § 416.920 (a) (2004). If both mental and physical impairments exist, they must be considered together at step two of the sequential analysis. Burrow v. Barnhart, 224 Fed. Appx. 613 (9th Cir. 2007) (unpublished) (ALJ errs as a matter of law when not considering all impairments together).

As explained above, the ALJ properly found that the Plaintiff did not have any mental limitations. Hence, because the ALJ determined that there was no mental limitation, the ALJ did not need to rate any degree of functional mental limitation. Nonetheless, the ALJ noted the State Agency review psychiatrists' findings from August 14, 2002 and March 28, 2003, which indicated that the Plaintiff did not have any severe mental disorder and that she had no limitations in activities of daily living, social functioning, concentration, persistence, or pace, and no documented episodes of decompensation. AR 16, 155, 179. Hence, the ALJ did not fail to properly rate the Plaintiff's mental functional limitations.

**ISSUE NO. 4:** The ALJ Properly Decided Not To Obtain Vocational Expert Testimony

The Plaintiff argues that because she suffers from severe non-exertional limitations, the ALJ should have acquired vocational expert testimony on the effect of Plaintiff's non-exertional limitations. In reply, the Defendant argues that the ALJ was not required to obtain vocational expert testimony.

Assuming the claimant cannot return to his past relevant work, the ALJ proceeds to step five. At step five, the burden shifts to the Commissioner to establish that even though the claimant cannot return to her prior type of work, there are other jobs that exist in substantial numbers in the national economy that the claimant can still perform considering her age, education and work experience.

Non-exertional impairments include "certain mental, sensory [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Part 404, Subpart P, Appendix 2 §200.00 (e) (1994). If an individual suffers from a non-exertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grids as a framework for a decision, but must rely on other evidence to carry the Commissioner's burden. <u>Desrosiers v. Secretary of Health & Human Servs</u>., 846 F. 2d 573, 578 (9th Cir. 1988); <u>Calvin v. Heckler</u>, 782 F.2d 802, 806 (9th Cir. 1986). The existence of a minor nonexertional impairment is insufficient to preclude use of the grids for directing a decision. Rather, the Commissioner should first determine if the nonexertional impairments significantly limit plaintiff's ability to do a full range of work at the appropriate exertional level in order to preclude a grids- based decision. <u>Desrosiers v. Secretary of Health and Human Servs,</u>. 846 F. 2d at 577. Also, an individual with both exertional and non-exertional limitations cannot be found non-disabled based only on the grids. <u>Lounsburry v. Barnhart</u>, 464 F. 3d 944 (9th Cir. 2006).

When the grids are inapplicable, the preferred method of proof is the testimony of the vocational expert. <u>Gonzalez v. Secretary of Health and Human Servs.,</u> 784 F.2d 1417, 1420 (9th Cir. 1986). If the grids cannot be used (as for example, when severe non-exertional impairments are present), the testimony of a vocational expert is required in order to support a finding of residual functional capacity for substantial gainful activity. <u>Desrosiers v. Secretary of Health and Human Servs,</u>. 846 F. 2d at 578. If the plaintiff suffers from non-exertional limitations not contemplated by the grids, the ALJ is required at step five to call upon a vocational expert to establish whether the plaintiff is disabled. <u>Tackett v. Apfel</u>, 180 F. 3d 1094 (9th Cir. 1999). Absent other reliable evidence of claimant's ability to perform specific jobs, the Commissioner must use a vocational expert. <u>Gamer v. Secretary of Health and Human Servs.</u>, 815 F. 2d 1275, 1279 (9th Cir.

1987).

As discussed above, the ALJ correctly determined that Plaintiff did not have a severe mental impairment or any mental limitations. Accordingly, because the Plaintiff did not suffer from any severe non-exertional impairments, the ALJ was not required to obtain vocational expert testimony. Furthermore, based on all the evidence, the ALJ found that "the additional limitations have little or no effect on the occupational base of unskilled light work," and that the Plaintiff is able to perform jobs in the national economy. AR 17.

Moreover, as the Defendant notes, the ALJ provided substantial evidence supporting the Plaintiff's RFC of being able to perform light exertional work. AR 14-15. For instance, the ALJ discussed the finding of Dr. Ella-Tamayo, a consultative internal medicine specialist who concluded that Plaintiff did not have any significant functional impairment from her examination on July 21, 2003. AR 14, 198. In addition, Dr. Tamiry found that Plaintiff could perform light exertion based on his July 30, 2004 consultative internal medicine examination. AR 14, 223-229.

Furthermore, while Plaintiff complained of neck pain, there was no indication that her neck pain was ongoing or that it affected her to a significant degree. AR 14, 217, 395. Also, while Plaintiff complained of back pain, Dr. Ella-Tamayo found that Plaintiff had normal gait and that range of motion, straight leg raising, sensation, deep tendon reflexes and motor strength were all intact. AR 14, 197. In addition, as discussed in the Decision, the Plaintiff has had no medical treatment and has not taken medications since June 2005, when she lost her aid to Families with Dependent Children and Medi-Cal. AR 16, 411-412. However, the Plaintiff did not visit the Arrowhead Regional Center for treatment, or apply for MIA (Medically Indigent Adult Program) or similar County medical indigent assistance. AR 16. Moreover, as discussed in Issue 5, the ALJ provided substantial evidence for discounting the credibility of Plaintiff's testimony.

**ISSUE NO. 5:** <u>The ALJ Made a Proper Credibility Finding</u>

Plaintiff argues that the ALJ failed to make proper credibility findings regarding Plaintiff's testimony, and failed to provide specific reasons for discounting Plaintiff's credibility. In response, Defendant argues that the ALJ provided legally sufficient reasons for discrediting Plaintiff's testimony.

The Commissioner's assessment of plaintiff's credibility should be given great weight. <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985). "If the ALJ's decision is based on a credibility assessment, there must be an explicit finding as to whether the plaintiff's testimony was believed or disbelieved and the testimony must not be entirely discounted simply because there was a lack of objective findings." <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407 (9th Cir. 1986). Furthermore, if the Commissioner chooses to disregard plaintiff's testimony, the Commissioner must set forth specific cogent reasons for disbelieving it. <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981); <u>Holohan v. Massanari</u>, 246 F.3d 1195 (9th Cir. 2001). Once the plaintiff produces objective medical evidence of an underlying impairment, the ALJ may still reject the plaintiff's testimony, but only by setting forth clear and convincing reasons for doing so. <u>Light v. Social Sec. Admin.</u>, 119 F.3d 780, 792 (9th Cir. 1997); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996); <u>see</u> <u>also</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).

In evaluating a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies within the claimant's testimony or as between his testimony and conduct, the claimant's daily activities and work history, as well as testimony from physicians or third parties concerning the nature, severity, and effect on the symptoms of which the claimant complains. <u>Light</u>, <u>supra</u>; <u>see also</u> <u>Reddick</u>, <u>supra</u> (although disability claimants should not be penalized for trying to lead normal lives despite their limitations, when the level of their activities are inconsistent with their claimed limitations, those activities have a bearing on the claimants' credibility).

In addition, the Plaintiff's daily activities, if rigorous enough to be a fair proxy for the demands of work, can constitute a basis to find allegations of disabling pain (or other subjective symptoms) not credible. Fair v. Bowen, 885 F. 2d 597, 603 (9th Cir. 1989) (daily activities may be reason to discredit excess pain allegation if claimant is able to spend a substantial part of the day performing activities that are transferable to a work setting.

In his Decision, the ALJ provided substantial evidence for discounting the credibility of Plaintiff's testimony. Among other factors, the ALJ's credibility determination considered Plaintiff's inconsistent testimony and failure to seek treatment. The ALJ provided specific and legitimate inconsistencies in the Plaintiff's testimony. The ALJ noted that while Plaintiff denied participating in any activity besides watching T.V., she reported to Dr. Fontana that she saw her son off to school and that she did most of the household chores. AR 16, 204. The ALJ also noted that Plaintiff reported cooking, visiting her brother, watching movies, doing laundry and household chores, and dressing and bathing herself. AR 16, 149. Further, as mentioned in the Decision, the Plaintiff stated her ability to get along with others was fair. AR 16, 149. She also reported getting along well with family. AR 16, 149.

Plaintiff's failure to seek medical treatment further discounted her credibility. Unexplained, or inadequately explained, failure to seek treatment or follow prescribed course of treatment may be sufficient to discredit an allegation of disabling pain. Fair v. Bowen, 885 F. 2d 597, 603 (9th Cir. 1989). However, the ALJ cannot reject the claimant's pain testimony if the claimant failed to seek treatment because the claimant could not afford it. Regennitter v. Commissioner, 166 F. 3rd 1294 (9th Cir. 1999). The ALJ noted that Plaintiff had a spinal surgery in 2004, which worsened her back condition. AR 16. The ALJ also stated that Plaintiff testified having constant back and right leg pain which is aggravated by any activity. AR 16, 410-410. Nonetheless, as discussed in the Decision, the Plaintiff has had no

medical treatment and has not taken medications since June 2005, when she lost her Aid to Families with Dependent Children and Medi-Cal. AR 16, 411-412. In addition, the ALJ noted that the Plaintiff did not visit the Arrowhead Regional Center for treatment, or apply for MIA or similar County medically indigent assistance. AR 16.

Hence, Plaintiff's inconsistencies in her testimony and her failure to obtain treatment for her medical condition and pain provided clear and convincing reasons for the ALJ's determination that Plaintiff's testimony is "inconsistent with the presence of an incapacitating or debilitating medical condition." AR 16. Further, since Plaintiff did not have any severe mental impairment, whether Plaintiff is credible is immaterial to Plaintiff's mental allegations.

## **CONCLUSION AND ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed and the Complaint is dismissed.

DATED: <u>October 13, 2009</u>

<pre>
             / s /
       _____
       STEPHEN J. HILLMAN
       UNITED STATES MAGISTRATE JUDGE
</pre>